

**ORDERED in the Southern District of Florida on August 22, 2023.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                                    Case No. 22-16950-RAM

FRANCI M. KEYES,                                          Chapter 13

      Debtor.
_____/

### ORDER SUSTAINING IN PART AND OVERRULING
### IN PART DEBTOR'S OBJECTION TO CLAIM NO. 11

When does the statute of limitations run on payments due under an installment promissory note? In this case, because the lender never accelerated the note, the statute of limitations began to run on each installment payment when it came due. Therefore, the debtor's objection to the lender's claim will be sustained in part and overruled in part. The claim is time-barred as to any payments that came due more than five years prior to the petition date and timely as to payments that came due less than five years prior to the petition date. For those interested in why this is so, read on.

1

Factual and Procedural Background

The Court conducted a hearing on August 15, 2023 on the Debtor's Renewed Objection to Claim No. 11 [DE #81] (the "Claim Objection") filed by Franci M. Keyes (the "Debtor") and the Response to Debtor's Renewed Objection to Claim No. 11 [DE #84] (the "Response") filed by Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Certificate Trustee of Bosco Credit II Trust Series 2010-1 ("Creditor").

On August 11, 2006, the Debtor, as borrower, executed a promissory note in the amount of $187,500 with an interest rate of 11.750% per annum, an executed copy of which is attached to Proof of Claim No. 11 (the "Note"). The Note provides that the Debtor shall make monthly payments of $1,892.64 on the first (1st) day of each month beginning on October 1, 2006. The Note further provides that "[i]f, on September 1, 2021, [the Debtor] still owe[s] amounts under this Note, [the Debtor] will pay all those amounts, in full, on that date." Paragraph 4(A) of the Note provides for a late charge of 5% on any monthly payment not received in full by the tenth (10th) day of the month. Paragraph 4(B) and (C) of the Note set forth a permissive notice, cure, and acceleration procedure. The Note provides that if the Debtor fails to cure any missed monthly payment by a date certain set forth in a written notice to the Debtor, "the Note Holder may require [the Debtor] the pay immediately the full amount of principal which has not been paid and all the interest that [the Debtor] owe[s] on that amount."

Creditor is the present holder of the Note. In the scant record presented in this contested matter, there is no evidence that the Creditor ever accelerated the Note or that the Debtor ever made payments on the Note. The Note was originally secured by a

mortgage dated August 11, 2006 (the "Mortgage") on real property located at 12220 SW 69th Place, Miami, Florida 33156 (the "Property"), but, as described below, the mortgage was released.  Here's what happened.

The Note and Mortgage was executed by the Debtor and by the Debtor's former spouse, Dr. David Keyes.  In 2008, Dr. Keyes filed a state court lawsuit against the former note holder, the mortgagee, the mortgage servicer, and others seeking a declaration that the Note and Mortgage are invalid, null and void apparently due to the Debtor forging Dr. Keyes' signature on the Note and Mortgage.  On September 25, 2008, Dr. Keyes and the mortgage servicer entered into a settlement agreement wherein Dr. Keyes agreed to pay $18,730 in exchange for a release of the Mortgage on the Property and a personal release from all claims related to the Mortgage and the Note.  An executed copy of the settlement agreement is attached as Exhibit A to Creditor's Response [DE #84].  Paragraph 5 of the settlement agreement provides that the release of the Mortgage and the personal release of Dr. Keyes "shall not preclude [the mortgage servicer] from pursuing claims against any third-parties including, but not limited to, Franci Keyes[.]"  While the settlement agreement satisfied the Mortgage and personally released Dr. Keyes from all claims related to the Note, the Note was not satisfied, and the Debtor was not released from any claims under the Note.

The Debtor and Dr. Keyes divorced.  The Debtor transferred the Property to Dr. Keyes via quit claim deed, which was recorded on May 7, 2010.  Dr. Keyes sold the Property on or about June 13, 2012.  Because the Mortgage was released in 2008 under the settlement agreement, Creditor received no proceeds from the sale.

On September 7, 2022 (the "Petition Date"), the Debtor filed a voluntary chapter 13 petition. Creditor filed Proof of Claim No. 11, asserting an unsecured claim in the amount of $494,985.48 allegedly due and owing on the Note. This contested matter ensued.

Analysis

In the Claim Objection, the Debtor argues that Creditor is barred from enforcing the Note because the applicable 5-year statute of limitations has lapsed. The Debtor argues that the statute of limitations began to run on June 13, 2012, the date that Dr. Keyes sold the Property securing the Note. In the Response, Creditor argues that the sale of the Property had no impact on the Note since the Mortgage was already satisfied under the settlement agreement and argues that the Debtor remains personally liable for all amounts due and owing on the Note. Creditor further argues that because the Note is an installment contract, the statute of limitations did not begin to run until the Note matured on September 1, 2021.

The Court agrees with Creditor that the settlement agreement between Dr. Keyes and the mortgage servicer did not satisfy the Note or release the Debtor from liability on the Note. Dr. Keyes' sale of the Property in 2012 also had no impact on the Note. Creditor received no money from the sale, so the sale did not reduce the Debtor's obligations under the Note. However, the Court disagrees with Creditor's argument that the applicable statute of limitations on all Note installment obligations did not begin to run until September 1, 2021, when the final payment came due.

Because Creditor asserts an unsecured claim against the Debtor's estate based upon the Debtor's default on the Note, the applicable statute of limitations is section

4

95.11(2)(b) of the Florida Statutes, which sets a five-year period for suits involving "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument[.]" Fla. Stat. § 95.11(2)(b).  The statute of limitations begins to run "from the time the cause of actions accrues." Fla. Stat. § 95.031.  "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).

Creditor is correct that the Note is an installment contract.  *See Greene v. Bursey*, 733 So. 2d 1111, 1114 (Fla. 4th DCA 1999) (finding that a note that provides for monthly installment payments is an installment contract).  The *Greene* court also explained why, absent acceleration, the Florida statute of limitations begins to run when each installment becomes due:

> Ordinarily, the statute of limitations under an installment contract starts to run on the date each payment becomes due.  As such, the statute of limitations may run on some installments and not others.  Where the installment contract contains an optional acceleration clause, the statute of limitations may commence running earlier on payments not yet due if the holder exercises his right to accelerate the total debt because of a default.  In other words, the entire debt does not become due on the mere default of payment; rather, it become[s] due when the creditor takes affirmative action to alert the debtor that he has exercised his options to accelerate.  This is true even when the note itself . . . waives notice of demand.

*Id*. at 1114-15 (internal citations omitted).

It is undisputed that Creditor never accelerated the note even though it had the option of doing so pursuant to the terms of the Note upon the Debtor's default in any given month.[1]  Therefore, contrary to Creditor's argument that the statute of limitations on the

---

[1] Default on a note alone does not accelerate the entire indebtedness. *Central Home Trust Co. v. Lippincott*, 392 So. 2d 931, 933 (Fla. 5th DCA 1980).  "To constitute an acceleration after default, where the holder has the option to accelerate, the holder or payee of the note must take some clear and unequivocal action indicating its intent to accelerate all payments under the note, and such action should apprise the maker of the fact that the option to accelerate has been exercised." *Id*.  "Examples of acceleration are a creditor's sending written notice to the debtor, making an oral demand, and alleging acceleration in a pleading filed in a suit on the debt." *Id*.  The record does not evidence that Creditor ever accelerated the entire indebtedness due on the Note due to a default by the Debtor.

5

Note did not begin to run until the final payment came due on September 1, 2021, the statute of limitations on the Note started to run on the date each installment payment was due to be paid. *See id.*; *Central Home Trust Co. v. Lippincott*, 392 So. 2d 931, 933 (Fla. 5th DCA 1980) (reversing and remanding an order denying recovery against the makers of an installment promissory note on the ground that the suit was barred by the five-year statute of limitations, holding that the installments due over five years before the suit was filed were barred, whereas the installments due afterward were not); *Holiday Furniture Factory Outlet Corp. v. Dep't of Corr.*, 852 So. 2d 926, 928 (Fla. 1st DCA 2003) (citing *Central Home Trust* and holding that plaintiff was entitled to sue defendant "for all of the unpaid installments, and the statute of limitations bars recovery only of those installments due over five years before [plaintiff] filed suit on December 28, 2001.").

Here, pursuant to the Note, the Debtor promised to pay the amount of $187,500 plus interest of 11.750% per annum to the note holder. To repay the principal and interest, the Note provided for installment payments in the amount of $1,892.64 due on the first day of each month beginning on October 1, 2006, with a final payment of all unpaid amounts outstanding on September 1, 2021 due on that date. The Note also provides for a late charge of 5% on any installment payment not received in full by the tenth day of the month in which the installment was due. It is unclear from the record exactly when the Debtor defaulted on the Note or whether the Debtor made any installment payments at all. Creditor failed to attach to its Proof of Claim No. 11 a statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

What is clear, however, is that Creditor is barred from collecting any installment payments and applicable late charges that came due more than five years prior to the

6

Petition Date (*i.e.*, installment payments and applicable late charges that became due before September 7, 2017). Installment payments and applicable late charges that came due on or after September 7, 2017, and remained due and owing as of the Petition Date, are not time-barred.

For the foregoing reasons, the Court ORDERS as follows:

1. The Claim Objection [DE #81] is sustained in part and overruled in part as provided herein.

2. Creditor is barred by the applicable statute of limitations from including in its claim any installment payments and applicable late charges that came due under the Note more than five years prior to the Petition Date. The Objection is overruled as to those installment payments and applicable late charges that came due within five years of the Petition Date.

3. By <u>September 14, 2023</u>, Creditor shall file an amended proof of claim reduced to claim only the amount of the non-barred installment payments and applicable late charges. The amended claim must attach a statement itemizing the non-barred individual installment payments and applicable late charges pursuant to Bankruptcy Rule 3001(c)(2)(A).

4. The further hearing on the Claim Objection, presently scheduled for September 19, 2023, is cancelled.

###

Copies to:

Michael A. Frank, Esq.
Seth Greenhill, Esq.
Nancy K. Neidich, Chapter 13 Trustee

7